**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 6 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOSEPH R. LEDBETTER,

        Plaintiff - Appellant,

v.

CITY OF TOPEKA, KANSAS;
MAYOR JOAN WAGNON;
MUNICIPAL JUDGE NEIL ROACH;
POLICE CHIEF DEAN FORESTER;
JOHN DOE-AN UNNAMED POLICE
OFFICER-TOPEKA POLICE
DEPARTMENT; OFFICER MARK
GRAYSON; LISA PINKLEY; and
CITY ATTORNEY LINDA P.
JEFFREY,

        Defendants - Appellees.

No. 02-3202

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 00-CV-1153-DES)**

---

Joseph R. Ledbetter, Pro Se, Plaintiff-Appellant.

Gregory A. Lee, of Davis, Unrein, McCalister, Biggs, & Head, LLP, Topeka,
Kansas, for the Defendants-Appellees.

---

Before **SEYMOUR** , **HENRY** , and **BRISCOE** , Circuit Judges.

**HENRY** , Circuit Judge.

The plaintiff, Joseph Ledbetter, filed this pro se civil rights action against the City of Topeka, Kansas and certain of its officials, alleging that the defendants violated the Fourth Amendment by arresting him on an invalid warrant and unlawfully searching his backyard. Mr. Ledbetter also alleged violations of his First Amendment rights and his right to be free from cruel and unusual punishment. The district court first dismissed all of Mr. Ledbetter's claims against the individual defendants, see Ledbetter v. City of Topeka, Kansas , no. 00-1153, 2001 WL 80060 (D. Kan. Jan. 23, 2001), and then granted summary judgment in favor of the City of Topeka on his remaining claim alleging a wrongful arrest in violation of the Fourth Amendment. See Rec. vol. I, doc. 82 (Memorandum Op. and Order, filed Jan. 18, 2002).

However, we conclude that the district court properly dismissed Mr. Ledbetter's claims against the individual defendants and that the court's grant of summary judgment to the City of Topeka was proper. [1]

---

[1] After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the disposition of this appeal. See Fed. R. App. P 34(a)(2)(C); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

## I. BACKGROUND

In 1998, Mr. Ledbetter was served with a complaint alleging that he had violated a Topeka municipal ordinance by failing to possess proof of registration of the vaccination of his dog. After Mr. Ledbetter failed to answer the complaint within the prescribed period, a court clerk issued a warrant and stamped it with the signature of Municipal Judge Neil Roach. "However, Judge Roach did not personally review or sign the warrant." Ledbetter v. City of Topeka, 2001 WL 80060, at *1.

Pursuant to the warrant, a municipal officer arrested Mr. Ledbetter. Mr. Ledbetter was detained for five hours and then released.

Subsequently, Judge Roach found Mr. Ledbetter guilty of violating the municipal ordinance as charged in the complaint and ordered him to pay a $132.00 fine. Mr. Ledbetter appealed the conviction to a Kansas district court, but he withdrew his appeal after the City agreed to dismiss the charge upon the purchase of a license for his dog.

Mr. Ledbetter then filed this civil rights action pursuant to 42 U.S.C. § 1983, asserting that: (1) in the course of investigating the municipal code violation, animal control officer Linda Jeffries searched his backyard without his consent, in violation of the Fourth Amendment; (2) Judge Roach's failure to sign

the arrest warrant rendered the arrest unreasonable and in violation of the Fourth Amendment; (3) the conditions to which he was subjected during his five hour detention constituted cruel and unusual punishment; and (4) city officials had violated his First Amendment rights by retaliating against him over a ten-year period. Mr. Ledebetter named as defendants the mayor of Topeka, Joan Wagnon; Municipal Judge Roach; the chief of police, Dean Forrester; a police officer, Officer Grayson; animal control officer Jeffries; and the City itself. He sought actual and punitive damages.

The district court dismissed Mr. Ledbetter's claims against all of the individual defendants. As to the animal control officer, the police officer, and the police chief, the court reasoned that Mr. Ledbetter had failed to serve them with the complaint. See Ledbetter , 2001 WL 80060, at *1. As to Mayor Wagnon and City Attorney Jeffrey, the court concluded that Mr. Ledbetter offered "no allegations remotely connecting [either of these defendants] to his alleged deprivation." Id. at *3. As to Municipal Judge Roach, the court stated that Mr. Ledbetter's allegations did not indicate that the judge acted in the clear absence of all jurisdiction. See id. Accordingly, the court held that Judge Roach was entitled to absolute immunity from Mr. Ledbetter's claims. See id.

The court also ruled that Mr. Ledbetter's First Amendment retaliation claim and his cruel and unusual punishment claim did not set forth specific allegations

of wrongdoing. Therefore, the court dismissed these claims as to the individual defendants and the city.

Subsequently, the district court granted summary judgment to the City of Topeka on Mr. Ledbetter's remaining claim—for wrongful arrest in violation of the Fourth Amendment. The court reasoned that even though Mr. Ledbetter's arrest warrant had been issued in violation of state law, "the issuance of [the] invalid warrant by Judge Roach was done pursuant to his position as a judicial officer of the State of Kansas" and Judge Roach was thus "not acting with final policymaking authority for the City." Rec. vol. I, doc. 82, at 12.

## II. DISCUSSION

Because Mr. Ledbetter proceeds pro se, we construe his pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972). We therefore read his appellate brief as challenging the district court's five dispositive rulings: (1) the dismissal of the claims against defendants Pinkley, Grayson, and Forrester for lack of service, (2) the dismissal of the claims against defendants Mayor Wagnon and City Attorney Jeffrey because Mr. Ledbetter had failed to connect them to the alleged constitutional violations; (3) the dismissal of Mr. Ledbetter's First Amendment retaliation claim and his cruel and unusual punishment claim; (4) the

dismissal of the claim against Judge Roach on immunity grounds, and (5) the grant of summary judgment to the City.

We review for abuse of discretion the district court's dismissal based on a lack of timely service. Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995). However, we review de novo the district court's grant of the individual defendant's motions to dismiss, applying the same standards as the district court under Fed. R. Civ. P. 12(b)(6). Wark v. United States, 269 F.3d 1185, 1189 n.3 (10th Cir. 2001). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). We also review de novo the district court's grant of summary judgment, applying Fed. R. Civ. P. 56. Rogers v. United States, 281 F.3d 1108, 1113 (10th Cir. 2002). Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Mincin v. Vail Holdings, Inc., 308 F.3d 1105 (10th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)).

A. Dismissal of the Claims Against Defendants Pinkley, Grayson, and Forrester

Upon review of the record, we conclude that the district court properly dismissed the claims against the defendants Pinkley, Grayson, and Forrester. As to these defendants, there is no indication that Mr. Ledbetter obtained proper service.[2]

B. Dismissal the Claims Against Defendants Mayor Wagnon and City Attorney Jeffrey

As to Mayor Wagnon and City Attorney Jeffrey, we note that under § 1983, "a defendant may not be held liable under a theory of respondeat superior." Worrell v. Henry, 219 F.3d 1197, 1214 (10th Cir. 2000). Instead, "a plaintiff must show that an affirmative link exists between the [constitutional] deprivation and either the [defendant's] personal participation, his exercise of control or direction, or his failure to supervise." Id. (citations and quotations omitted). Here, Mr. Ledbetter's complaint fails to allege such conduct by the mayor or the city attorney.

---

[2] When a plaintiff fails to serve a defendant within the 120-day period, the district court "shall dismiss the action without prejudice or direct that service be effected within a specified time." See Espinosa, 52 F.3d at 841 (quoting Fed.R.Civ.P. 4(m)). Accordingly, we read the district court's dismissal of Mr. Ledbetter's claims against the defendants Pinkley, Grayson, and Forrester as a dismissal without prejudice.

### C.  Dismissal of First Amendment Retaliation Claim

We also agree with the district court that dismissal of Mr. Ledbetter's First Amendment retaliation claim was warranted.  As the district court noted, Mr. Ledbetter's "allegations of retaliatory conduct and free speech deprivation are vague and completely lacking in specificity,"     see Ledbetter , 2001 WL 80060 at *2, and the complaint fails to allege how the individual defendants participated in the alleged violation of his rights.     See Northington v. Jackson   , 973 F.2d 1518, 1520-21 (10th Cir. 1992) (noting that although the court should liberally construe a pro se plaintiff's complaint, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations").

### D. Dismissal of Cruel and Unusual Punishment Claim

Similarly, Mr. Ledbetter's cruel and unusual punishment allegations lack the necessary specificity.  Mr. Ledbetter's complaint states that he was falsely imprisoned in "[h]einous conditions," but provides no further detail.  Rec. vol. I, doc. 1, at 4 (Complaint filed April 20, 2000).

We note that  in an affidavit submitted in response to the City's motion for summary judgment, Mr. Ledbetter states that he was kept "in a filthy cell with no toilet in [his] bare feet."  Rec. vol. I, doc. 70, Ex. A (affidavit of Joseph

Ledbetter, dated Sept. 14, 2001). Even if Mr. Ledbetter had alleged these facts in his complaint, they are insufficient to establish that he was subjected to cruel and unusual punishment in violation of the Constitution.

Under the Due Process Clause of the Fourteenth Amendment, the City was required to provide to a pretrial detainee such as Mr. Ledbetter "humane conditions of confinement by ensuring . . . the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee [his] safety." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998); see also Craig v. Eberly, 164 F.3d 490, 495 (10th Cir.1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.") (citation omitted). In order to establish city officials' liability for violating his right to humane conditions of confinement, Mr. Ledbetter was required to establish that: (1) the officials "kn[ew] of and disregard[ed] an excessive risk to [his] health and safety," Farmer v. Brennan, 511 U.S. 825, 837 (1994) and (2) the alleged deprivation was "sufficiently serious." See Wilson v. Seiter, 501 U.S. 294, 298, (1991). As to the second component, jail conditions may be "restrictive and even harsh" without violating constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "[O]nly those deprivations denying the minimal civilized measure of life's necessities . . .

are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298. (internal quotation marks omitted).

Here, Mr. Ledbetter's contention that he was placed in his bare feet in a cell without a toilet for five hours does not allege a sufficiently serious deprivation to constitute a constitutional violation. See Barney, 143 F.3d at 1311 (noting that "[a]n important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration").

### E.  Claim against Judge Roach

The dismissal of Mr. Ledbetter's claim against Judge Roach on immunity grounds was also proper.  We acknowledge that the district court concluded that "by allowing the clerk to sign [Mr. Ledbetter's arrest warrant] for the court, Judge Roach issued [the] warrant in violation of Kansas law." Ledbetter, 2001 WL 80060 at *2. [3]  However, a judicial officer is entitled to absolute immunity from a claim for damages under § 1983 unless he has acted "in the clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356 (1978) (quotations and citations omitted);  see also Rosenthal v. Justices of the Supreme Court of Cal., 910 F.2d 561, 565-66 (9th Cir. 1991) ("A judge is immune from suit under 42

---

[3]  Kansas law requires that all warrants issued by the municipal court "shall be signed by a judge of the municipal court."  Kan. Stat. Ann. § 12-4208 (2000).

U.S.C. § 1983 for acts in excess of his jurisdiction, so long as the acts themselves were judicial.").

Here, even assuming that his acts violated Kansas law, Judge Roach did not act "in the clear absence of all jurisdiction." Stump, 435 U.S. at 356. Accordingly, he is entitled to absolute immunity from Mr. Ledbetter's claim for damages against him.

### F. Claim Against the City

The district court granted summary judgment to the City on Mr. Ledbetter's remaining claim—that he was arrested on an invalid warrant. The court reasoned that in allowing the use of his signature, Judge Roach was not acting as a municipal policymaker.

Under § 1983, a municipality may not be held liable on a theory of respondeat superior. Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 (1978)). Instead, the plaintiff must show "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal quotation marks omitted). When the plaintiff proceeds

on a theory that the alleged constitutional violation was caused by an official with policymaking authority:

> The touchstone for determining "official policy" is "distinguish[ing] acts of the municipality from acts of employees of the municipality, and thereby mak[ing] clear that municipal liability is limited to action for which the municipality is actually responsible. . . . [M]unicipal liability under § 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."

Melton v. City of Oklahoma City, 879 F.2d 706, 723 (10th Cir. 1989) (quoting Pembauer v. City of Cincinnati, 475 U.S. at 478-79, 483-84 (1986)), overruled on other grounds, 928 F.2d 920 (10th Cir. 1991) (en banc). Additionally, in identifying final municipal policymakers, the courts must examine state laws and local ordinances or regulations to determine where the statutory law places the responsibility for making law or setting policy in a particular area. Melton, 879 F.2d at 724.

Here, as the district court observed, the authority of the municipal official whom Mr. Ledbetter named as a defendant and sought to hold responsible for the issuance of the arrest warrant—Judge Roach—is established by state law. See Rec., vol I, doc. 82 at 10 (noting that "the judicial authority wielded by Kansas municipal judges is governed by the Kansas Code of Procedure for Municipal Courts," and that "[a] municipal judge's duty to sign all municipal arrest warrants

-12-

is directly mandated by statute" (citing Kan. Stat. Ann. § 12-41-1 et. seq and § 12-4208)). [4] Thus, "Judge Roach's authority to issue arrest warrants was circumscribed by his judicial duty to follow state law," and "[a]ny procedural 'trailblazing' on his part," [i.e. allowing a signature stamp to be used without personally reviewing the warrant] "was not done under the auspices of the City and could not be interpreted as promulgating municipal policy."        Id.

Mr. Ledbetter has failed to present any evidence indicating that Judge Roach or the clerk who affixed his signature stamp acted as municipal policymakers.  Moreover, although our circuit does not appear to have specifically addressed the question of the policymaking authority of a municipal judge, we note that several other circuits have concluded that municipal judges did not act as policymakers and thus could not render a city liable for a constitutional violation under § 1983.    See Eggar v. City of Livingston   , 40 F.3d 312, 314-15 (9th Cir. 1994) (holding that a municipal judge "was performing a state judicial function and not acting as a final decision maker for the City when deciding how or whether to advise the plaintiffs of their rights, and whether to appoint counsel" and stating that "[t]he [j]udge's failure to follow state law or federal constitutional law does not transform his [conduct] into municipal

---

[4]  Because Mr. Ledbetter did not name as a defendant the clerk who stamped Judge Roach's signature on the warrant, we do not consider the actions of that official here.

policymaking"); Woods v. City of Michigan City, 940 F.2d 275, 279 (7th Cir. 1991) (holding that the city and county were not liable for a municipal judge's bond directive because the judge was acting as an officer of the state judicial system); Carbalan v. Vaughn, 760 F.2d 662, 665 (5th Cir. 1985) (noting that a municipality had no policy regarding the municipal judge's duties, and that, if the judge erred "the city is not liable simply because the judge held the office of municipal judge"); cf. Williams v. Butler, 863 F.2d 1398, 1402 (8th Cir. 1988) (holding that a municipal judge constituted a policymaker because, "[r]egarding employment matters in his court, [the municipal judge] had been delegated carte blanche authority . . . and was exercising that authority when he hired and when he fired [the plaintiff]"). We are persuaded by the reasoning of these cases.

We therefore conclude that the district court properly granted summary judgment to the City on Mr. Ledbetter's wrongful arrest claim.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's dismissal of Mr. Ledbetter's claims against the defendants Pinkley, Grayson, and Forrester for failure of service and we AFFIRM the district court's dismissal of the claims against the remaining individual defendants (Mayor Wagnon, City Attorney

Jeffrey, and Municipal Judge Roach) for failure to state a claim.[5] We also

AFFIRM the district court's grant of summary judgment to the City of Topeka on

Mr. Ledbetter's wrongful arrest claim.[6]

---

[5] As noted above, we view the district court's dismissal of the claims against the defendants Pinkley, Grayson, and Forrester as one without prejudice.

[6] We note that even though Mr. Ledbetter cites cases involving the Kansas Tort Claims Act, Kan. Stat. Ann. § 75-6101 et seq., see Aplt's Br. at 3 (citing, inter alia, Watson v. City of Kansas City, Kan., 80 F.Supp.2d 1175 (D. Kan. 1999)), the parties and the district court read his complaint as alleging only federal law claims. We interpret his claims similarly and thus do not address any potential state law claims arising out of these facts.